UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILSHAWN TALLEY-ELLIS,

           Petitioner,

                                      Civil No. 22-cv-11121

                                      Hon. Mark A. Goldsmith

SARAH SCHROEDER,

           Respondent.
_____/

**OPINION AND ORDER (i) DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS (Dkt. 7), (ii) DENYING A CERTIFICATE OF APPEALABILITY, AND (iii) DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

Petitioner Wilshawn Talley-Ellis filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] (Dkt. 7). The petition challenges his Macomb County jury-based convictions and sentence for assault with intent to commit murder, Mich. Comp. Laws § 750.83, and possessing a firearm while committing a felony (felony-firearm), Mich. Comp. Laws § 750.227b. The petition raises the sole claim that trial counsel provided ineffective assistance under Lafler v. Cooper, 566 U.S. 156, 162 (2012) by failing to advise Petitioner that he was subject to a 25-year mandatory minimum sentence as a fourth-offense habitual offender. Respondent has filed an answer, contending that the claim lacks merit.

---

[1] Petitioner opened this case with a "motion for stay and abeyance" with a supporting affidavit. Mot (Dkt. 1). The Court ordered Petitioner to file a habeas corpus petition if he wished to proceed in this action. 10/13/22 Order (Dkt. 5). Petitioner filed his petition on 11/23/22. See Pet.

For the reasons set forth below, the Court concludes that Petitioner is not entitled to habeas relief and denies the petition. The Court also declines to issue a certificate of appealability and denies leave to proceed in forma pauperis on appeal.

## I. BACKGROUND

Petitioner's convictions arose from a shooting in Sterling Heights, Michigan. The following facts recited by the Michigan Court of Appeals are presumed correct on habeas review. Wagner v. Smith, 581 F.3d 410, 413 (6th Cir. 2009); 28 U.S.C. § 2254(e)(1):

> This case arises from a shooting at an automotive assembly plant in Sterling Heights on the evening of August 18, 2018. According to trial testimony, defendant arrived at the plant that evening visibly upset by his suspicions that his girlfriend, who was working at the plant, was having an affair. A physical altercation occurred outside the plant between defendant and the victim. At some point, the victim walked back toward the building and defendant went to his car and retrieved a gun. Defendant proceeded to chase the victim through the plant and fired one bullet, which did not hit the victim. According to a witness, defendant aimed the gun at the victim and fired. While the victim was hiding after the shooting, he heard defendant say, "I was going to kill you." Defendant, however, testified at trial that he did not intend to shoot the victim and that he fired the gun at the ceiling, not at the victim.
>
> Evidence of defendant's phone calls to his girlfriend were admitted into evidence. During those calls, defendant told his girlfriend that if she did not come to court, then "they can't do anything." Defendant also told his girlfriend not to speak with the prosecution, the police or answer her phone or the door.
>
> Defendant testified that at approximately 10:00 p.m., he and his girlfriend were arguing on the phone about her "drinking and smoking with other guys at work." Defendant drove to the plant and was met outside by two employees and his girlfriend. According to defendant, the victim then came outside and defendant yelled an insult at him. The victim then attacked defendant, throwing a few punches which defendant testified he swatted away.
>
> After this altercation, defendant testified that he went to his vehicle to leave and another employee was right next to him. Defendant was startled so he grabbed a gun, causing the employee to exclaim: "He got a gun." Defendant further testified that at the same time this statement was made, the victim was running toward the door and defendant followed him. After defendant and the victim struggled at the door, the victim ran toward the back of the factory and defendant chased him, eventually stopping because he realized that he did not want to harm the victim. At

2

that juncture, defendant testified that he fired the gun into the air. Defendant denied ever pointing the gun at the victim or firing the gun at the victim. According to defendant, he never intended to shoot or kill the victim, he only wanted to scare him.

Defendant denied that he threatened his girlfriend not to come to court, rather, defendant testified, he merely told her that she did not have to testify and that the prosecution could not force her to do so because she and defendant consider themselves to be husband and wife.

People v. Talley-Ellis, No. 349112, 2020 WL 6110954, at *1–2 (Mich. Ct. App. Oct. 15, 2020) (unpublished per curiam opinion); 10/15/20 Op. at PageID.738–46 (Dkt. 15-21).

On April 18, 2019, the jury found Petitioner guilty of assault with intent to commit murder and felony-firearm. The trial court originally sentenced Petitioner as a fourth-offense habitual offender, Mich. Comp. Laws § 769.12, to 25 to 50 years in prison for the assault conviction and a consecutive two-year term of imprisonment for the felony-firearm conviction. Id.

Petitioner filed a direct appeal in the Michigan Court of Appeals. Talley-Ellis App. Br. at PageID.777 (Dkt. 15-21). Petitioner raised the following claims through counsel:

> I. Mr. Talley-Ellis was denied due process where he was not informed a Habitual Offender, 4th Notice, carrying a mandatory 25-year sentence had been filed.
> a. Lack of Service
>
> b. Ineffective Assistance of Counsel
>
> c. The Remedy Under Lafler v Cooper
>
> II. Mr. Talley-Ellis was denied a fair trial by the admission of irrelevant and prejudicial evidence that he had advised a witness not to appear.
>
> III. Mr. Talley-Ellis was denied his due process rights where his convictions are not supported by sufficient evidence of guilt.

Id. at PageID.778.

Petitioner also filed a pro per supplemental brief raising claims concerning jury instruction error and ineffective assistance of counsel for failing to inform him of the 25-year mandatory

3

minimum sentence. Id. at PageID.817.  With respect to Petitioner's claim that he was not properly notified of his fourth-offense habitual offender status, the court of appeals agreed and determined he was entitled to resentencing as a second-offense habitual offender.  Talley-Ellis, 2020 WL 6110954, at *2.  The court remanded for resentencing but otherwise affirmed his convictions.  Id.  Petitioner filed an application for leave to appeal in the Michigan Supreme Court, which that court denied on June 1, 2021.  People v. Talley-Ellis, 959 N.W.2d 517 (Mich. 2021).

On May 11, 2021, during the pendency of Petitioner's direct appeal, the trial court resentenced Petitioner as a second-offense habitual offender to 18 to 30 years for the assault conviction.  5/11/21 J. of sent'g at PageID.712 (Dkt. 15-17).  Petitioner appealed his new sentence to the Michigan Court of Appeals, which remanded for resentencing because Petitioner's "application for leave to appeal [the] Court's judgment was pending in our Supreme Court at the time of resentencing, the trial court lacked [ ]subject-matter jurisdiction."  People v. Talley-Ellis, No. 357388, 2022 WL 2288584, at *1 (Mich. Ct. App. June 23, 2022).  On September 20, 2022, the trial court resentenced Petitioner as a second-offense habitual offender to 15 to 30 years for the assault conviction and two years for felony-firearm. Amend. J. re-sent'g at PageID.737 (Dkt. 15-20).  Petitioner did not appeal his new sentence.

Petitioner then filed the present habeas petition in this Court raising the sole claim: "Ineffective assistance of counsel – due process/the remedy under Lafler v. Cooper (2012)." Pet. at PageID.28.  Respondent filed an answer contending that the petition should be denied because the claim lacks merit.

## II. STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, imposes "important limitations on

4

the power of federal courts to overturn the judgments of state courts in criminal cases." Shoop v. Hill, 586 U.S. 504, 506 (2019). A federal court may grant habeas corpus relief only if the state court's decision "resulted in a decision that was contrary to, or involved an unreasonable application of," Supreme Court precedent that was "clearly established" at the time of the adjudication. 28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405–06 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409. To obtain habeas relief in federal court, a state prisoner must show that the state-court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011)

A state court's factual determinations are presumed correct on federal habeas review. See 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption of correctness only with clear and convincing evidence. Id. For claims that were adjudicated on the merits in state court, habeas review is "limited to the record that was before the state court." Cullen v. Pinholster, 563 U.S. 170, 181 (2011).

### III. ANALYSIS

Petitioner's sole argument before the Court is that trial counsel provided ineffective assistance under Lafler v. Cooper, 566 U.S. 156, 162 (2012) by failing to advise Petitioner that he was subject to a 25-year mandatory minimum sentence as a fourth-offense habitual offender.

5

Petitioner asserts that defense counsel was ineffective during the plea-offer stage and argues that, had he been properly informed, he would have accepted the trial court's offer of a sentence not exceeding 10 years. Pet. at PageID.28. The Michigan Court of Appeals rejected this claim on direct appeal, concluding that:

> [D]efendant's claim that trial counsel was ineffective by failing to advise him regarding the mandatory 25-year minimum sentence is moot. As discussed earlier, there is no proof that defendant was served with the fourth-offense habitual-offender notice and no evidence that he had actual notice. Therefore, he is entitled to resentencing as a second-offense habitual offender.

Talley-Ellis, 2020 WL 6110954, at *6.[2]

The Michigan Court of Appeals' ruling was not an unreasonable application of federal law or contrary to clearly-established Supreme Court precedent. A criminal defendant is entitled to effective assistance of counsel during the plea-bargaining process. Lafler, 566 U.S. at 162. On habeas corpus review, to prevail on an ineffective assistance of counsel claim, Petitioner must show that the state court's denial of his claim was contrary to, or an unreasonable application of, Strickland v. Washington, 466 U.S. 668 (1984). Strickland established a two-prong test for claims of ineffective assistance of counsel: a habeas petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. See id. at 687. Petitioner must overcome the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, and he must overcome the presumption that "the challenged action 'might be considered sound trial strategy." Id. at 694.

---

[2] As discussed above, on direct appeal, Petitioner raised a claim concerning lack of proper notice of his habitual fourth offender status. The Michigan Court of Appeals determined that although the lower court file contained a fourth-offense-habitual-offender notice that was filed on September 26, 2018, Petitioner did not receive sufficient notice because the certificate of service did not comply with Michigan Court Rule 2.104. Talley-Ellis, 2020 WL 6110954, at *2–3.

6

The standard for obtaining habeas corpus relief is "'difficult to meet.'" White v. Woodall, 572 U.S. 415, 419 (2014) (quoting Metrish v. Lancaster, 569 U.S. 351, 358 (2013)). In the context of an ineffective assistance of counsel claim under Strickland, the standard is "all the more difficult" because "[t]he standards created by Strickland and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." Harrington, 562 U.S. at 105 (internal citations and quotation marks omitted). "[T]he question is not whether counsel's actions were reasonable"; but whether "there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id. Moreover, "defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." See Missouri v. Frye, 566 U.S. 134, 147–49 (2012).

First, Petitioner has not shown that counsel's performance was deficient. Petitioner challenges counsel's failure to advise him that, as a fourth-offense habitual offender, he faced a mandatory minimum sentence of 25 years. But, as noted by the Michigan Court of Appeals, the state-court record suggests defense counsel lacked actual notice of Petitioner's fourth-offense habitual offender status and, therefore, did not know that the sentence enhancement applied to Petitioner. At the arraignment, defense counsel acknowledged her receipt of the second-habitual offender notice. 9/14/18 Tr. at PageID.121. The prosecutor then notified defense counsel of his intent to amend the information from a second-habitual offender notice to a fourth-habitual offender notice. Id. at PageID.123. The notice issue was brought up again at the hearing on February 6, 2019, during the parties' discussion of Petitioner's bond reduction. 2/6/19 Tr. at PageID.167 (Dkt. 15-6). Although the prosecutor stated that a reduction in bond was inappropriate considering Petitioner's "four prior felony convictions, habitual fourth notice," defense counsel did not acknowledge receipt of the habitual fourth notice, nor did she respond to the prosecutor's

7

statement regarding the number of prior felonies, suggesting that counsel was unaware of the notice. Id. It is also reasonably inferable from the hearing transcript that counsel did not hear the prosecutor's statement because she was speaking with Petitioner while the prosecutor addressed the court. Id. at PageID.168. Lastly, defense counsel acknowledged during sentencing that she never received the habitual-fourth offender notice. Counsel stated to the trial court, "Mr. Fox informed myself . . . that he was requesting habitual fourth and that he filed the notice on or about September 25, 2018 . . . I never received that notice . . . I'd only been given notice of a habitual second." 5/21/19 Tr. at PageID.677–678 (Dkt. 15-13). Because it is evident from the state-court record that counsel was not informed of Petitioner's habitual-fourth offender status, she did not perform deficiently by failing to advise Petitioner that he was subject to a mandatory 25-year sentence. Accordingly, the Michigan Court of Appeals reasonably applied Strickland's first prong.

Second, even if the Court were to find that defense counsel had received actual notice, Petitioner has not shown that he suffered any prejudice from counsel's conduct. Although Petitioner argues that had he known about the 25-year mandatory sentence he would have accepted the sentencing offer of 10 years, he has not shown that there was formal plea offer available for him to accept or reject. Indeed, the record shows otherwise. For instance, the prosecutor acknowledged that: "The People are aware of the court's normal practice of Cobbs agreement, but I understand that there are no plea agreements available at this point[.]" 4/16/19 Tr. at PageID.187 (Dkt. 15-9). Defense counsel ageed and stated, "Yes, there have been no offers." Id. at PageID.188. During resentencing, Petitioner's new defense counsel raised the point that the Court had offered Petitioner a Cobb's sentencing offer of 10 years.[3] 5/11/21 Tr. at PageID.724 (Dkt. 15-

---

[3] In People v. Cobbs, 505 N.W.2d 208 (Mich. 1993), the Michigan Supreme Court authorized a particular type of plea agreement in which the trial judge indicates (as part of the plea agreement) a proposed sentence; while the judge is not bound to impose this particular sentence, if he fails to

8

18) ("Talley-Ellis was never advised of the existence of the habitual fourth. If he had, he would have accepted your offer of a sentence not to exceed 10 years."); see also Affidavit of Defense Counsel, PageID.805 (Dkt. 15-21). The prosecutor did not recall a 10-year sentencing offer. Id. at PageID.728. Nevertheless, even if the trial court had offered Petitioner a sentence not to exceed 10 years if he pleaded guilty, there is nothing in the record supporting that a plea offer was available to Petitioner. And if the 25-year minimum was mandatory, then the trial court would have been unable to impose the recommended 10-year sentence had the prosecutor provided a plea offer. See Cuellar v. Chapman, No. 23-1607, 2024 WL 2873205, at *3 (6th Cir. Feb. 21, 2024). Petitioner therefore does not show prejudice. The Michigan Court of Appeals reasonably applied Strickland's second prong. Accordingly, Peititoner is not entitled to habeas relief on his ineffective assistance of counsel claim.

## IV. CONCLUSION

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on his claims. Accordingly, the Court denies and dismisses with prejudice the petition for a writ of habeas corpus.

Before Petitioner may appeal, a certificate of appealability (COA) must issue. See 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A COA may issue only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal district court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claims debatable or wrong. Slack v. McDaniel, 529 U.S. 473, 484–485 (2000). "A petitioner satisfies this standard

---

do so the defendant retains the absolute right to withdraw his plea. See Wright v. Lafler, 05-2571, 2007 WL 2566042 at *1 (6th Cir., Sept. 5, 2007).

by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003). In this case, Petitioner fails to make a substantial showing of the denial of a constitutional right as to his habeas claims. Accordingly, the Court denies a COA.

Lastly, the Court concludes that an appeal cannot be taken in good faith. See Fed. R. App. P. 24(a). Accordingly, the Court denies leave to proceed in forma pauperis on appeal.

**IT IS SO ORDERED.**

Dated: August 6, 2025          s/Mark A. Goldsmith
Detroit, Michigan         MARK A. GOLDSMITH
        United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 6, 2025.

        s/Joseph Heacox
        JOSEPH HEACOX
        Case Manager